Boyle *v.* The P. & R. C. & I. Co., Appellant.

Argued April 23, 1930.

Before Trexler, P. J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Graff, JJ.

*J. A. Welsh,* and with him *B. D. Troutman* and *John F. Whalen,* for appellant.

*Roger J. Dever,* for appellee.

Opinion by Linn, J., July 10, 1930:

This is a compensation case and the single question is whether the evidence supports the finding that death

resulted from pneumonia caused by excessive wetting sustained by decedent while at work in the mines.

Claimant's husband was in good health July 13, 1928 when he went to work in the morning. He was employed in a gangway in the mines setting up timbers. That portion of the mine had been flooded, and while the water had been dammed back, it covered the gangway to a depth "above the rails." While working in this water, at about 10 o'clock (he began at 7) he told his fellow workman that he "was not feeling good." He left the mines about 2:30 P. M. and arrived home at 3:50; between 5 and 6 a doctor arrived who prescribed for him, and who, in the words of the compensation board, "found him apparently a very sick man, red face, respiration very much increased, temperature and pulse high." This doctor saw him again on the two following days and was then called out of town; another doctor was engaged, and on July 17th, death resulted from pneumonia.

The medical evidence to support the finding that the wetting received at work in the gangway produced the illness which resulted in death 4 days later is as follows: "Q. I am asking you as a professional man, under the testimony, he goes to work apparently well, wet in the gangway, at 10 o'clock complains of not feeling well, comes home with chills about 3:00, he dies in three days—what, in your opinion professionally, caused this man's pneumonia? A. He certainly got a chill. Q. What caused the chill? A. The exposure to the water. Q. Is it your opinion this wetting at work was the predisposing cause of the pneumonia? A. Yes. The man going to work and being exposed to water and getting sick there, that is where he contracted the trouble."

The other doctor testified as follows: "Q. Doctor, is it your professional judgment that the congestion you found on your first visit, the night of the 13th, was directly the result of any wetting he got on that

180

same day, up to 10 o'clock in the morning? A. I think it is possible. Q. Can you state in a general way how long it would take for a congestion that preceded pneumonia, to develop? A. Well, anywhere from a few hours to 2—3 days, possibly sometimes 5 or 6 days. Q. In your best judgment, did this congestion you found, or could this congestion you found, have formed as quickly as it did, could it be caused by this wetting—assuming he had a wetting there that day? A. I believe it could. Q. Do you know any other predisposing cause, except this predisposing cause? A. No. Q. It is the only one in here? A. That is all.''

That evidence is sufficient to support the finding of fact made by the compensation authorities and the learned court below within the rule stated in McCrosson v. Phila. Rapid Transit Co., 283 Pa. 492, and considered with reference to other authorities in Ripani v. Dittman, 297 Pa. 124, 130; see also Dopkin v. C. and I. Co., 296 Pa. 71; Broch v. Coal Co., 296 Pa. 502; Jones v. C. and I. Co., 285 Pa. 317.

Judgment affirmed.