Heisler *v.* Lincoln Realty Company, Appellant.

Argued March 4, 1936.

Before KELLER, P. J., CUN-
NINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*Paul G. Collins,* with him *Frank L. Martin,* for appellant.

*J. Harry Morosini,* for appellee.

OPINION BY BALDRIGE, J., April 16, 1936:

This is a compensation case in which the vital question involved is whether the evidence supports the finding of the board that death of claimant's husband from pneumonia resulted from an accident in the course of deceased's employment within the meaning of the Workmen's Compensation Act of June 2, 1915, P. L. 736, and its amendments.

The claimant's husband, in good health, went to work on the morning of February 14, 1934. He was employed by defendant as janitor of a building formerly used as a bank, the first floor of which was being changed into storerooms. One of the workmen of the contractor, about 9:30 a. m., broke a 2-inch steam pipe, which was located a short distance below the street

floor under that portion of the building known as store No. 5. This occurrence caused the basement thereunder to become so full of escaping steam as to make it impossible to see. One of the witnesses testified that the steam was so dense "I couldn't stand it. I didn't stay in there. I couldn't see my hand in front of me." An employee of the contractor was sent to inform the janitor, Heisler, who operated this valve when necessary, to turn off the steam. The deceased was on the second floor, and, in order to reach the main entrance which led to store No. 5, he was required to walk a distance of more than one hundred feet on the street. The weather was extremely cold, the thermometer registering five degrees above zero. When he reached the basement he had to walk about fifty feet through the steam to a highly heated valve room to turn the steam off. In about a half hour, the deceased, following his former route, returned to the second floor, where he changed his outer garments as they were wet. The evidence supported the conclusion of the board that the condition of deceased's clothing was due to his exposure to the steam. He then relieved the elevator operator and worked at that job until 1 o'clock. He left for home that afternoon at his usual quitting time and when he reached there he had a chill. He returned to work the following morning suffering from a severe cold, but was unable to complete the day. Upon his arrival home the doctor was summoned and found that he had bronchial pneumonia, which caused his death February 20, 1934. The attending physician stated that the pneumonia resulted from undue exposure.

The board reversed the referee, who refused compensation, and found that the deceased's walking out of doors and being subjected to draft in operating the elevator while his clothes were wet caused the pneumonia and that the condition of his clothing was at-

tributable to the accidental breaking of the steampipe. The court below, on appeal, affirmed the finding and conclusions of law.

The sudden breaking of the steam pipe, which created an unusual condition, was an unforeseen and untoward happening—something out of the ordinary—which was not to be reasonably anticipated in the course of the deceased's regular work. While the dividing line in this type of case is at times apparently indistinct, we think the facts here come within Jones v. P. & R. C. & I. Co., 285 Pa. 317, 132 A. 122; Broch v. Lehigh Valley Coal Co., 296 Pa. 502, 146 A. 899; Boyle v. P. & R. C. & I. Co., 99 Pa. Superior Ct. 178; Senlock v. P. & R. C. & I. Co., 104 Pa. Superior Ct. 156, 158 A. 663, which hold that death from pneumonia resulting from extraordinary exposure to wet and cold is compensable.

This case is distinguished from Lacey v. Washburn & Williams Co., 309 Pa. 574, 164 A. 724, as there the exposure was not the result as here of some untoward occurrence—something aside from the usual course of events; and Wilkins v. McSorley et al., 119 Pa. Superior Ct. 442, 179 A. 759, where the turning on of a fan, which caused death, was designed, of which the decedent had due notice and warning; therefore, we held there was nothing accidental about it.

After a careful consideration of the assignments of error, we do not find that any of them have merit.

Judgment affirmed.