## Bannon v. Pittsburgh, Appellant.

Argued April 29, 1941. Before

KELLER, P. J., BALDRIGE, STADTFELD, RHODES, HIRT and KENWORTHEY, JJ.

*John A. Robb,* Special Assistant City Solicitor, with him *Wm. Alvah Stewart,* City Solicitor, for appellant.

*A. L. McLaughlin, Jr.,* for appellee.

OPINION BY HIRT, J., July 18, 1941:

This appeal questions the sufficiency of the evidence to support the finding of a causal connection between the unusual exposure of claimant's husband during the flood in Pittsburgh on March 17, 1936, and his death, 2½ years later, on September 15, 1938. He died from peritonitis following the removal of the appendix. Death following extraordinary exposure to wet and cold may be compensable under the compensation statute (*Jones v. Phila. & Reading C. & I. Co.,* 285 Pa. 317, 132 A. 122) if from "such disease or infection as naturally results therefrom." Act of June 2, 1915, P. L. 736, §301. The referee made an award which was affirmed by the board and the lower court.

Claimant's husband had been a fireman in the employ of the City of Pittsburgh for seventeen years and during all of that period was in apparent good health. On March 17, 1936 a disastrous flood occurred at Pittsburgh. That day at about 11 P.M., a fire broke out in a steel plant in the flooded area. Decedent attended this

fire and in the performance of his duties was obliged to stand in water waist high. In rescuing another fireman who had fallen from a broken ladder, he also became thoroughly wet to his shoulders but continued to work throughout the night and until 8:35 the following morning, when he, in common with the other firemen, showed evidence of exhaustion. He remained at the firehouse continuously for four or five days working the night shift. He saw his family physician on March 23, 1936 and complained of cough, sore throat and gastro-intestinal disturbance. He was referred to Dr. H. H. Sullivan, an ear, nose and throat specialist, on July 13, 1936, who found him suffering from tinnitus, a ringing of the ear, and an infection of the nose and throat. His general condition was found to be very much under par and an examination disclosed that his tonsils were infected, a chronic pre-existing condition which had been lighted up by the exposure. The manner of his recovery from the tonsil operation indicated lowered vitality. His teeth later were found to be badly infected and were all removed without materially improving his general health and he still had a "noisy ear." On June 17, 1937, he was examined by Dr. D. B. Wolfe who found soreness over the appendix; he diagnosed the cause as chronic appendicitis. More than one year later, on August 22, 1938 decedent again consulted this doctor and complained of weakness, tired feeling, dizziness and nervousness. Dr. Wolfe then advised an operation but the appendix was not removed until September 8, 1938. Its condition was found to be "subacute" with thickened walls and somewhat inflamed, but not ruptured. After three days a generalized peritonitis set in and claimant's husband died on September 15, 1938.

There is no obvious relation between a germ infection of the throat, mouth or nasal passages and an infected appendix. Cf. *Bunnell v. State Work's Ins. Fund,* 124 Pa. Superior Ct. 171, 188 A. 411. Any disability re-

sulting from the unusual exposure on the night of March 17, 1936, was of accidental origin under the act, but claimant had the burden of establishing, by expert medical testimony, a causal connection between the accident and the death of her husband. *Bunnell v. State Work's Ins. Fund,* supra. Death followed an operation for a chronic ailment and the burden was on the claimant to show that it was an accident in the course of employment that actually produced death. *Monahan v. Seeds & Durham,* 336 Pa. 67, 6 A. 2d 889. The dispute presents a mixed question of fact and of law reviewable on the latter aspect alone. *Vorbnoff. v. Mesta Machine Co.,* 286 Pa. 199, 133 A. 256. That case restated the present rule that nothing short of expert testimony, plainly to the effect "that the accident had materially *contributed" to the disease* causing death "in the sense of being, if not the sole cause, then, at least the *superinducing cause* thereof", can meet the degree of proof required. That is now the settled standard of proof and in the testimony of the medical expert it must plainly appear "that in his professional opinion the result in question *came* from the cause alleged" : *Elonis v. Lytle Coal Co.,* 134 Pa. Superior Ct. 264, 3 A. 2d 995. To support a claim where there is a serious question whether disability or death is the result of an accident, unequivocal medical testimony is necessary. *Mohr v. Desimone & Sayers,* 110 Pa. Superior Ct. 44, 167 A. 504. The present case demonstrates the reason for the rule, and where death occurs long after the accident and lowered resistance alone is relied upon to maintain the continuity of events, the burden is on the claimant to *clearly* establish causal connection between the accident and the death, by expert testimony. *Parzuhoski v. Pgh. Coal Corp.,* 140 Pa. Superior Ct. 179, 13 A. 2d 879; *Olsweski v. Lehigh Nav. Coal Co.,* 145 Pa. Superior Ct. 193, 20 A. 2d 874. (Italics supplied.)

Three medical witnesses testified for claimant. Dr. W. B. Harvey, the family physician, saw decedent at

the time of the flood and periodically thereafter and testified: "after having been on duty during the flood, this man never did regain his usual good health. I would judge that this exposure reduced his vitality and that it was a *contributing* cause of death." Dr. Sullivan had occasion to observe decedent before and following the tonsillectomy. His examination was limited to the ears, nose and throat. It was his opinion that the aggravated tonsil condition and the tinnitus resulted from the exposure. His testimony went no further. Dr. Wolfe observed decedent occasionally from June 15, 1937 until his death. Following the removal of the appendix decedent did not respond normally to post operative care "due to a lack of resistance on the part of the patient." He testified: "From the history that he gave me *I would imagine* that the lack of resistance was due to the exposure that he had undergone." He was unable to state when the chronic appendicitis began and said it is impossible to determine the cause after the appendix is out. He also testified that an appendix may be infected from bad tonsils or teeth or other primary foci, or the appendix itself may become a primary focus of infection from some other cause; that the chronic appendicitis "probably started while his teeth and tonsils were bad" though "it is quite probable" that its development was independent of the infection of the tonsils and teeth. He attributed decedent's lowered resistance to the exposure at the time of the flood and stated: "Peritonitis, in my opinion developed as a result of the patient's lowered resistance."

This conclusion of Dr. Wolfe is no more than a statement that the injury was indirectly responsible for the peritonitis. This is not enough. *Morgan v. Phila. & Reading C. & I. Co.*, 273 Pa. 255, 116 A. 891. In that connection it was there said: "This could be said of any injury, however slight, which was coincident with certain illness or with conditions leading up to them, in the sense that vitality would be lowered, although

the injury might have no direct relation to the illness at all." Clearly no causal connection between the unusual exposure and the appendicitis was shown and the fact cannot be ignored that death occurred 2½ years after the accident, though this fact is not conclusive. *Watson v. Lehigh Coal & N. Co.,* 273 Pa. 251, 116 A. 889. In the meantime decedent in some manner had been able to perform his work as a fireman and was absent from his duties only two days during the period. This appeal, therefore, is clearly distinguished from cases such as *Mazza v. Kensington Water Co.,* 133 Pa. Superior Ct. 559, 3 A. 2d 282 where the disability causing death followed the exposure immediately. Considering the medical testimony as a whole in the light most favorable to claimant, it falls short of the standard of proof required. "To be compensable, under the statute, the injury must be the *direct or superinducing cause* of the death or disability in question": *Anderson v. Baxter,* 285 Pa. 443, 132 A. 358.

Judgment reversed and directed to be entered for defendant.